OPINION *Page 2 
{¶ 1} Defendant-appellant, Anthony Owens (hereinafter "Owens"), appeals the judgment of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.
 {¶ 2} On July 16, 2006, the Comfort Inn located in Allen County, Ohio was robbed. The Allen County Grand Jury indicted Owens for aggravated robbery in violation of R.C. 2911.01(A)(1), a first degree felony on August 30, 2006.
 {¶ 3} On October 30, 2006, Owens waived his right to an attorney, and on November 3, 2006, a written waiver of counsel was filed. On November 7, 2006, the trial court allowed F. Stephen Chamberlain to withdraw as counsel of record but appointed him as standby counsel "to lend technical support to defendant during hearings or trial."
 {¶ 4} On August 9, 2007, Owens requested counsel be reappointed, and the trial court reappointed Attorney Chamberlain. Owens requested that he be appointed different trial counsel on August 30, 2007. (Tr. 8/30/07 at 10). The trial court denied Owens' request for new court appointed counsel. (Id. at 16). Owens clearly stated that he did not want Attorney Chamberlain to represent him. (Id. at 14-16). The trial court informed Owens that he could: (1) hire an attorney of his own choosing; (2) have Attorney Chamberlain as his court-appointed *Page 3 
counsel; or (3) represent himself. (Id. at 16). Attorney Chamberlain continued to represent Owens that day. (Id. at 16).
 {¶ 5} A jury trial was held on September 4, 5, 6, and 7, 2007. On the first day of trial, Owens waived his right to counsel, and Attorney Chamberlain was appointed as standby counsel. (Tr. 9/4/07-9/7/07 at 36). The jury found Owens guilty of aggravated robbery. Thereafter, the trial court held a sentencing hearing and sentenced Owens to ten years imprisonment.
 {¶ 6} Owens filed his appeal with this Court asserting four assignments of error, and we heard oral arguments for this case on April 29, 2008. On May 8, 2008, Owens then filed a motion for leave to file an additional assignment of error, which this Court denied by separate entry.
 {¶ 7} It is from the trial court's judgment that Owens appeals and asserts four assignments of error for our review. For clarity of analysis, we have combined Owens' third and fourth assignments of error.
 ASSIGNMENT OF ERROR NO. I The court erred when it accepted Mr. Owens' waiver of counsel without sufficient examination of whether it was knowing and intelligent. Sixth Amendment, United States Constitution; Section 10, Article I, Ohio Constitution. Jury Trial Transcript, Vol.I, at 38.
 {¶ 8} In his first assignment of error, Owens argues that his conduct through the proceedings should have alerted the trial court to problems with *Page 4 
Owens representing himself. Owens maintains that his actions should have put the trial court on notice that he could not give a knowing and intelligent waiver. Specifically, Owens points to: (1) the repetitious motions he filed which had already been denied by the trial court; (2) the irrelevant subpoenas that were quashed; (3) his lack of a legal education; (4) his erroneous statement that intent to harm was an element of the offense, even after being corrected by the trial court; (5) the fact that he made a distinction between robbery and theft, noting that this crime only constitutes a theft; and (6) the fact that he waived counsel on the day of trial. In addition, Owens argues that he stated multiple times that he was forced to represent himself because his trial counsel failed to get an expert to review the surveillance tape, and he thought that representing himself was the only way to preserve the error.
 {¶ 9} The Sixth Amendment to the United States Constitution provides that an accused shall have the right "to have the Assistance of Counsel for his defense." Although a defendant has a right to counsel, the defendant may "waive that right when the waiver is voluntary, knowing, and intelligent." State v. Petaway, 3d Dist. No. 8-05-11,2006-Ohio-2941, ¶ 8, citing State v. Gibson (1976), 45 Ohio St.2d 366,345 N.E.2d 399, paragraph one of the syllabus, citing Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. "`[T]o establish an effective waiver of right to counsel, the trial court must make *Page 5 
sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right.'" Id. at ¶ 9, citingGibson, 45 Ohio St.2d at paragraph two of the syllabus.
 {¶ 10} In order for the defendant's waiver of counsel to be valid" `such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation therof, and all other facts essential to a broad understanding of the whole matter.'" Gibson, 45 Ohio St.2d at 377, quoting Von Moltke v. Gillies (1948), 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.
 {¶ 11} On October 30, 2006, Owens indicated that he wanted to represent himself. (Tr. 10/30/06 at 18). The trial court inquired into whether Owens understood that he had the right to an attorney and informed Owens that he would be held to the same rules of evidence and criminal procedure that bind any lawyer. (Id. at 21-24). The trial court further warned Owens that the court could not provide him legal assistance. (Id. at 26). The trial court also informed Owens of the elements of the charge that the prosecution must prove and possible defenses to the charge. (Id. at 27). The trial court also warned Owens of the possible prison term of three, four, five, six, seven, eight, nine, or ten years if he were convicted, and that he was subject to five years of post-release control. (Id. at 28-29). *Page 6 
In addition, the trial court informed Owens of the potential difficulties he may face if he is not represented by an attorney, including the fact that it may be easier for an attorney to contact potential witnesses and perform legal research. (Id. at 34). The trial court also urged Owens to have counsel represent him. (Id. at 35). However, Owens waived his right to an attorney, and the trial court accepted his waiver of counsel. (Id. at 44-45).
 {¶ 12} Attorney Chamberlain was appointed as standby counsel on November 7, 2006. Owens then requested that counsel be reappointed, and the trial court reappointed Attorney Chamberlain on August 9, 2007. Owens requested that new counsel be appointed on August 30, 2007, which the trial court denied. (Tr. 8/30/07 at 10, 16). The trial court informed Owens that he could: (1) hire an attorney of his own choosing; (2) have Attorney Chamberlain as his court appointed counsel; or (3) represent himself. (Id. at 16). Attorney Chamberlain continued to represent Owens. (Id. at 23-38). On the first day of trial, but prior to jury selection, the following discussion took place:
 MR. OWENS: Uh, Your Honor* * * I asked last week to replace my counsel with another counsel because I — I'm — I am totally not prepared to go to trial. But if I have to, I'm going to do the best that I can. But I would like to state for the record uh, me and Mr. Chamberlain do not see eye-to-eye on this defense. He has not responded to the State's demand for discovery as uh, what he intend to use at trial, the witnesses. He haven't gave the State notice of witnesses intended to be called at trial. *Page 7 
 Mr. Chamberlain took over this case on August the ninth of 2007. This trial date was — was already been set — already set, scheduled for September the fourth, 2007. That Mr. Chamberlain had needed more time in order to prepare, or get a defense — help get this defense together and get these witnesses into evidence* * *
 This uh, — Mr. Chamberlain just got a DVD last night. I mean, not last night, excuse me, on August the thirtieth of 2007 from the State — just turnt (sic) over a DVD they suppose to enhance uh, did whatever they suppose to have did to — gave it to Detective Delong, or what he is at the LPD uh, thirteen months later. Thirteen months later they come up with a DVD. And Mr. Chamberlain has not sent this tape — uh, DVD out to get tested. Now, four days before trial, the State want to slam a DVD, an enhanced version of a DVD on the defense and how we gonna — I'm not no expert to look at this tape to see how this tape was edited, altered, enhanced. And we have not had enough time to get this tape to an expert — on the thirtieth, and-THE COURT: All right. Mr. Chamberlain, are you prepared to go to trial, Mr.Chamberlain?
 MR. CHAMBERLAIN: Your Honor, I'm prepared to go to trial. Uh, Mr. Owens and I had two meetings over the weekend. We met for approximately an hour on Friday and met for two and a half hours last night. We don't completely agree regarding defense strategy. However, he's participated in assisting in telling me what his views are. I don't agree with a lot of those views as to how to present the case. And I advised him several times that if once this trial starts, if I start representing him, then that's it. We're — that's how the case will go. I'll be representing him through the trial.
 And he's not entitled to some sort of hybrid representation. Uh, so — and I asked several times last evening whether or not he was going to be representing himself and told him what he would — that he would have to tell the Court that this morning before we got started, and advised him what he needed to do and his response was, "We'll just wait and see what tomorrow brings." So we're at that point. I'm prepared to go forward and I'll go forward with the trial. I'll — if Mr. Owens is going to represent himself, I'll remain on as standby counsel for purposes of self representation. *Page 8 
 * * *
 THE COURT: * * * Okay, Mr. Owens, do you want to have an attorney represent you or not?
 * * *
 MR. OWENS: I would like to finish stating cause I was cut off to go to Mr. Chamberlain. Mr. Chamberlain stated uh, on August the thirtieth when he was handed the DVD and paperwork from the uh, the State's supplemental discovery. He stated in this courtroom that he was gonna get an expert to look at this. He asked you to hold the DVD in land lock. He asked the Court that.
 So my point is, he is suppose to be getting a expert. And further, he stated that two hours he came to visit — two hours. When he came up there last night, this two hours was up there arguing. Up there arguing.
 * * *
 THE COURT: Do you want an attorney to represent you or not?
 MR. OWENS: I want a attorney to represent me. I don't want him. I want an attorney that's gonna get a expert to do this tape, your Honor. That's all I want. Yes, I do want an attorney — THE COURT: Okay, very good. MR. OWENS: But I want an attorney to protect my rights.
 * * *
 MR. CHAMBERLAIN: At this point, your Honor, I'm going to object. If I'm going to be doing this trial, I'll raise the objection at the proper time if it needs to be done, if it's gonna be introduced.
 * * *
 THE COURT: He wants an attorney. He doesn't get his choice of attorney. The Court's appointed competent counsel who has indicated he's ready to proceed. He will proceed as soon as we get the prospective jurors in here, and we can handle any evidence problems as they come up.
 MR. OWENS: Uh, Your Honor? Your Honor, if I — this man, Mr. Chamberlain stated he was gonna get a expert to review this DVD. Now, if this attorney right here is not gonna get the stuff — the requested expert, the Court has a lot of money for this expert. He stated he was gonna get this expert. He stated he was *Page 9 gonna get this tape tested. He stated the tape, the DVD came on August the thirtieth, which is documented.
 Now, trial is today, September the fourth, and we have no expert. Now, if this lawyer is not gonna stand by and get no expert, I do not want him and I want that stated for the record. I am forced in a position to represent myself and I will and I want that noted for the record. THE COURT: You're not forced to represent yourself.
 * * *
 THE COURT: All right, we're gonna to stand in recess until the jury comes in.
 MR. OWENS: Yes, and your Honor, I will be representing myself — most definitely.
 WHEREUPON, the Court recessed at 9:51 a.m.
 WHEREUPON, the Court reconvened at 9:54 a.m.
 THE COURT: * * * As the Court left the courtroom moments ago, Mr.Owens, you were heard to be demanding that you're gonna to represent yourself. Is that your decision?
 MR. OWENS: Yes, I am, I will represent myself. I'm being forced in this position to represent myself.
 THE COURT: Okay, that's your position. But, I want the record to be crystal clear on this. The Court is ready to appoint counsel for you; has appointed counsel for you. I want the record to be clear that you are not being forced by anybody, especially the Court, to represent yourself, that that is your own decision. You are not being forced to represent yourself. You do not have to represent yourself. I don't know if I can make that any clearer.
 * * *
(Tr. 9/4-9/7, Vol. I. at 16-22).
 {¶ 13} The trial court and Owens continued their discussion regarding whether Owens wanted to waive his right to trial counsel. The trial court made sure that Owens knew he was charged with a first degree felony; that if he was convicted, he could be sentenced to three to ten years imprisonment; and that he was subject to post-release control for five years. (Id. at 25-26). In addition, the *Page 10 
trial court warned Owens that he would be subject to rules of procedure and evidence that would bind a lawyer. (Id. at 29). Further, the trial court stated, in pertinent part:
 * * * I must advise you that in almost every case, it would be in my opinion that a trained lawyer would defend you far better than you can defend yourself. It is almost always unwise of a defendant on trial uh, to try to represent themselves. You're not familiar with the law. You're not familiar with handling a trial. You're not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself. * * *
(Id. at 35). The trial court then asked Owens whether he still desired to represent himself and Owens replied, "Yes I do, your Honor." (Id. at 36). Owens requested that another attorney be appointed as standby counsel; however, the trial court denied Owens request and appointed Attorney Chamberlain to again act as Owens' standby counsel.
 {¶ 14} The fact that Owens filed repetitious motions, irrelevant subpoenas, and erroneously stated that intent to harm was an element of the offense does not mean that Owens was incapable of knowingly and voluntarily waiving his right to counsel. Owens had previously waived his right to trial counsel on August 30, 2006 after the trial court had made sure that Owens understood the nature of the crime, potential penalties, possible defenses, and the dangers of representing himself. In addition, before accepting his second waiver of counsel, the trial court conducted an inquiry into whether Owens' understood that he was charged with *Page 11 
aggravated robbery, which is a first degree felony that carries a potential prison term of three to ten years. (Tr. 9/4/07-9/7/07, Vol. I at 25-26). Further, the trial court asked Owens whether he understood that he would be subject to the same rules of evidence and procedure that a lawyer must follow. (Id. at 29). Owens answered in the affirmative to the aforementioned questions. (Id. at 26-29). In addition, the trial court strongly warned Owens against representing himself. (Id. at 35). After Owens was provided the aforementioned warnings and information, he voluntarily waived his right to counsel.
 {¶ 15} Furthermore, although Owens did not possess any legal education, many criminal defendants who choose to represent themselves have no legal education. The mere fact that Owens lacked a legal education does not mean that he was unable to knowingly and voluntarily waive his right to counsel, especially given the fact that the record contains motions and subpoenas that Owens had filed while previously representing himself, and he had stated on the record that he had completed school and was able to read, write, and understand the English language. (Id. at 37).
 {¶ 16} While Owens waived his right to trial counsel on the first day of trial, this does not indicate that Owens' waiver was involuntary or unknowingly made. From the record, it appears as though Owens kept changing his mind regarding whether he wanted to be represented by trial counsel. Additionally, *Page 12 
Owens had previously represented himself in this case and was aware of the consequences of waiving his right to counsel. Thus, Owens' decision to waive trial counsel on the date of trial does not show that his waiver was either involuntary or unknowing.
 {¶ 17} Owens distinction between robbery and theft, and his argument that the crime only constituted a theft was a matter of Owens' trial strategy, and had no effect on whether his wavier of counsel was knowing and voluntary.
 {¶ 18} Finally, the fact that Owens and Attorney Chamberlain disagreed about whether having an expert review the surveillance tape was necessary, and Owens' mistaken belief that representing himself was the only way to preserve the error does not effect the knowing and voluntary nature of Owens' waiver of counsel. Attorney Chamberlain indicated that he would raise an objection at the proper time if the tape was going to be introduced into evidence. In addition, the defense was able to cross-examine the prosecution's witnesses about the enhanced video surveillance. The trial court properly informed Owens about the potential penalties he would face if he was convicted and cautioned him against waiving his right to counsel. After being so informed, Owens chose to waive his right to be represented by counsel.
 {¶ 19} After reviewing the record, we find that Owens knowingly, intelligently, and voluntarily waived his right to trial counsel. *Page 13 
 {¶ 20} Owens' first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The court erred when it limited standby counsel's role depriving Mr. Owens of his right to proceed pro se with the assistance of standby counsel. Section 10, Article I, Ohio Constitution; Motion to Suppress Transcript, December 14, 2006, at 11; Judgment Entry in re Pending Motions, March 13, 2007
 {¶ 21} In his second assignment of error, Owens argues that the trial court erred when it limited Owens' standby counsel's role. Owens argues that the trial court "limited standby counsel to seeing the defendant in court and addressing court rules and protocol, while noting that standby counsel was present to assist the court and not to serve the defendant." (Appt. Brief at 10). Owens maintains that a defendant has a right to standby counsel in Ohio and argues that limiting his standby counsel's role "to enforcing courtroom protocol and serving only the court eviscerated [his] Constitutional right to proceed pro se with standby counsel." (Id.).
 {¶ 22} A criminal defendant has the "right to conduct his own defense." McKaskle v. Wiggins (1984), 465 U.S. 168, 170, 104 S.Ct. 944,79 L.Ed.2d 122, citing Faretta, 422 U.S. 806. Further, the United States Supreme Court had held that "a trial court may appoint `standby counsel' to assist the pro se defendant in his defense." Id. *Page 14 
 {¶ 23} The Ohio Supreme Court has held "[i]n Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of counsel. However, these two rights are independent of each other and may not be asserted simultaneously."State v. Marin, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 277, at paragraph one of the syllabus. A criminal defendant is not entitled to hybrid representation. State v. Gaskins, 9th Dist. No. 06CA0086-M,2007-Ohio-4103, ¶ 42, citing Martin, 2004-Ohio-385, at ¶ 32.
 {¶ 24} In the present case, the trial court appointed Attorney Chamberlain to act as Owens' appointed counsel. Thus, we do not have to address whether a defendant has a right to appointed standby counsel.
 {¶ 25} The United States Supreme Court has held that "[a] defendant'sSixth Amendment rights are not violated when a trial judge appoints standby counsel-even over the defendant's objection-to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." McKaskle, 465 U.S. at 184.
 {¶ 26} In the present case, the trial court appointed standby counsel to address courtroom rules and protocols. A criminal defendant has the right to conduct their own defense; however, as previously noted a criminal defendant is not entitled to a hybrid representation.Gaskins, 2007-Ohio-4103, at ¶ 42, citation *Page 15 
omitted. The role of standby counsel is not to perform legal research for a criminal defendant who chooses to represent themselves at trial. Rather, standby counsel is appointed to attend the trial and answer the defendant's questions regarding courtroom procedure. Accordingly, we find that the trial court did not err in limiting Owens' standby counsel's role.
 {¶ 27} Thus, Owens' second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The court erred when it failed to apply a real sanction to a discovery violation. Jury Trial Transcript, Vol. II, at 395.
 ASSIGNMENT OF ERROR NO. IV The State's failure to preserve the 911 or police dispatch tape rendered the trial fundamentally unfair. Due Process Clause of the United States Constitution; Fourteenth Amendment to the United States Constitution; Section 2, Article I, Ohio Constitution; Jury Trial Transcript, Vol II, at 395.
 {¶ 28} Owens states, in his third assignment of error, that the trial court found that the prosecution's failure to turn over the tape of the call made to either 911 or the sheriff's department constituted a discovery violation.[1] Owens argues that the trial court sanctioned the prosecution from using the evidence it had not turned over, and that barring the prosecution from using the evidence was inappropriate because the evidence would have benefited the defendant. Owens *Page 16 
maintains that since Norman Haynie, the individual working at the Comfort Inn that was robbed, failed to mention the presence of the knife in his written report, Owens has reason to believe that the tape would have aided his defense by providing impeachment evidence against the prosecution's eyewitness. In addition, Owens argues that the tape had been recorded over, and thus, the prosecution could not have possibly used the tape as evidence. Owens argues that the trial court's finding of a discovery violation necessitated a sanction, and the trial court's failure to apply any sanction amounted to an abuse of discretion.
 {¶ 29} Owens asserts in his fourth assignment of error that the failure to preserve the 911 tape or sheriff's office tape of the report of the robbery constituted a failure to preserve exculpatory evidence and violated his due process rights. According to Owens, the tape is not obtainable by any other reasonable means.
 {¶ 30} The prosecution maintains that it did not violate the discovery rules. The prosecution argues that the record does not indicate that it intended to use the tape at trial, and the record does not include any evidence that the tape was material to the trial.
 {¶ 31} The prosecution counters, Owens' fourth assignment of error, by arguing that the production of the 911 tape would have had little chance of producing a not guilty verdict; that Owens never filed a motion to preserve the *Page 17 
tape; and Owens did not specifically ask for the tape until May 21, 2007, which was some time after the tape had been recorded over. The prosecution maintains that Owens had the burden of showing that there was a Brady violation rising to the level of a due process violation, and Owens has failed to make any such showing.
 {¶ 32} Crim. R. 16 provides the discovery rules for criminal proceedings. State v. Engle, 166 Ohio App.3d 262, 2006-Ohio-1884,850 N.E.2d 123, ¶ 7. The failure to comply with Crim. R. 16 is governed by Crim. R. 16(E)(3), which provides:
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.
Emphasis added; Id., citing Crim. R. 16(E)(3).
 {¶ 33} A prosecutor's violation of Crim. R. 16 is reversible error, "only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." State v. Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981,836 N.E.2d 1173, ¶ 131, citing State v. Parson (1983), 6 Ohio St.3d 442,445, 453 N.E.2d 689. *Page 18 
 {¶ 34} The trial court's decision regarding a Crim. R. 16 discovery sanction is reviewed under an abuse of discretion standard. State v.Gibson, 3d Dist. No. 1-06-74, 2007-Ohio-3345, ¶ 12, citations omitted. An abuse of discretion implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, citations omitted. "[I]n determining the appropriate sanction, the trial court must make an inquiry into the circumstances of the discovery violation."Engle, 166 2006-Ohio-1884, at ¶ 8, citing Lakewood v. Papadelis (1987),32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus. Further, "the trial court `must impose the least severe sanction that is consistent with the purpose of the rules of discovery.'" Id., citingPapedelis, 32 Ohio St.3d at paragraph two of the syllabus.
 {¶ 35} In addition, "[t]he United States Supreme Court has held that `the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." State v. Griffin, 3d Dist. No. 1-03-31,2004-Ohio-287, ¶ 9, citing Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194, 10 L.Ed.2d 215. However, Brady does not apply "`unless the evidence is material to mitigation, exculpation or impeachment.'" Id. quoting State v. Keene (1998), 81 Ohio St.3d 646, 693 N.E.2d 246, citingCalley v. Calloway (5th Cir. 1975), 519 F.2d 184, 221. "`[E]vidence *Page 19 
shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id., quoting State v.Yarbrough (Apr. 30, 2001), 3d Dist. No. 17-2000-10, at *8.
 {¶ 36} In regards to the 911 or sheriff department tape, the trial court found that in "construing in favor of the defendant, even if I don't have to, find there's a violation." (Tr. 9/4/07-9/7/07, Vol. II at 395). The trial court ordered that "any recording of telephone conversations that don't exist, are not going to be entered into evidence" as a discovery sanction. (Id. at 395-96).
 {¶ 37} Even assuming arguendo that a discovery violation had occurred, as the trial court did in deciding the issue, we do not find a reversible error. In order to be reversible error, as previously noted, there must be a showing that the accused suffered prejudice.Jackson, 2005-Ohio-5981, at ¶ 131. However, after reviewing the record, we are unable to conclude that Owens suffered prejudice due to the lack of the tape. Norman Haynie testified at the trial, and Owens cross-examined him about the fact that his written statement did not include a reference to a weapon. (Tr. 9/4/07-9/7/07, Vol. II at 303-305). The mere fact that Haynie did not include a mention of a weapon in his written report does not necessarily mean that a weapon was not involved, or that the 911 or sheriff's department tape would also lack any mention of a weapon. In addition, a DVD of the robbery was *Page 20 
admitted into evidence, and the DVD shows that Owens had a small knife. (State's Ex. 2).
 {¶ 38} Moreover, the 911 or sheriff's department tape was not material as there was not a reasonable probability that had the evidence been disclosed to Owens the result of the proceeding would have been different. Griffin, 2004-Ohio-287, at ¶ 9, quoting Yarbrough, 3d Dist. No. 17-2000-10, at *8.
 {¶ 39} Owens' third and fourth assignments of error are, therefore, overruled.
 {¶ 40} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur.
[1] The briefs and the trial court refer to either a 911 tape or a sheriff's office tape because Norman Haynie, the victim in this case, testified that he did not call 911 but rather called the sheriff's office. (Tr. 9/4/07-9/7/07 at 286). *Page 1