[Cite as *State v. Crider*, 2014-Ohio-2240.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 1-13-20

    v.

DUANE G. CRIDER,                       O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Allen County Common Pleas Court
Trial Court No. CR20120308

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: May 27, 2014


APPEARANCES:

    *Michael J. Short* for Appellant

    *Jana E. Emerick* for Appellee

**WILLAMOWSKI, P.J.**

{**¶1**} Defendant-appellant Duane G. Crider ("Crider") brings this appeal from the judgment of the Court of Common Pleas of Allen County finding him guilty of multiple offenses and sentencing him to prison. Crider raises four assignments of error challenging 1) his representation of himself, 2) a denial of a continuance, 3) denial of effective assistance of counsel, 4) the imposition of consecutive sentences, 5) violation of his Fourth Amendment rights, 6) violation of his Fifth Amendment rights, and 7) use of a "carbon-copy" indictment. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{**¶2**} On September 1, 2012, Crider gave the victim, who was a relative, a ride home from Walmart. Once they were in the vehicle, Crider took the victim out into an isolated area and stopped the car. The victim attempted to flee, but Crider caught her, pushed her down, and removed some of her clothing. Crider bit the victim's breast and penetrated her vagina with his finger and his penis. Crider then took the victim home, apologized to her, and promised it would not happen again.

{**¶3**} On September 2, 2012, the victim was babysitting at Crider's home and when she was done, Crider drove her home as he usually did when she babysat. Like the day before, Crider took her back to the same location and

proceeded to sexually assault her again. This time, the victim was able to call 9-1-1 and the assault was recorded by the police department as they tried to locate the victim. As Crider took the victim home, he spoke with her telling her that it would happen again. The victim was able to record this conversation on her phone. When the victim arrived home, she told her mother what had happened and the police were called. The victim was taken to the hospital for a rape exam and her clothing was collected. The police went to Crider's home, arrested him, and collected his clothing as well.

{¶4} On October 11, 2012, the Allen County Grand Jury issued an indictment charging Crider with eight counts: 1) rape in violation of R.C. 2907.02(A)(2), a felony of the first degree; 2) sexual battery in violation of R.C. 2907.03(A)(5), a felony of the third degree; 3) kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree; 4) gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree; 5) rape in violation of R.C. 2907.02(A)(2), a felony of the first degree; 6) sexual battery in violation of R.C. 2907.03(A)(5), a felony of the third degree; 7) kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree; and 8) gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree. Doc. 3. Crider entered pleas of not guilty to all charges when he was arraigned on October 30, 2012. Doc. 5.

{¶5} From March 5-7, 2013, a jury trial was held. After the lunch break on March 6, 2013, Crider told the trial court that he wished to discharge his retained counsel. The trial court conducted a thorough inquiry into the reasoning for the decision and fully discussed the impact with Crider before granting the motion to remove counsel. Crider was then permitted to represent himself. Crider then requested a continuance, which was denied. On March 7, 2013, the State concluded its case. Crider waived his opening statement and presented the testimony of two witnesses before resting. The State then moved to dismiss Count 8 of the indictment and the motion was granted. Crider and the State each presented their closing arguments and the jury was charged. Approximately two and a half hours later, the jury returned with verdicts of guilty as to the seven remaining counts. The trial court then determined that Counts 1, 2, and 3 were allied offenses of similar import and merged. The same ruling was applied to Counts 5, 6, and 7. The State elected to proceed to sentencing as to Counts 1, Count 4, and Count 5.

{¶6} The trial court immediately proceeded to sentence Crider. The trial court ordered Crider to serve eleven years in prison on Count 1, eighteen months in prison on Count 4, and eleven years in prison on Count 5. The trial court ordered that the sentences were to be served consecutively. On April 5, 2013,

Crider filed his notice of appeal. Doc. 85. Crider's appellate counsel raises the following assignments of error on appeal.

**First Assignment of Error**

**The trial court erred in permitting [Crider] to represent himself.**

**Second Assignment of Error**

**The trial court erred in denying [Crider] a continuance after allowing [Crider] to represent himself.**

**Third Assignment of Error**

**[Crider] was denied effective assistance of counsel during the time he had counsel.**

**Fourth Assignment of Error**

**The trial court erred in imposing consecutive sentences without making the findings required by R.C. 2929.14(C)(4).**

On February 26, 2014, Crider filed a motion to file supplemental assignments of error. App. Doc. 21. The motion was granted on February 28, 2014. App. Doc. 22. Crider then raised three additional assignments of error.

**Fifth Assignment of Error**

**[Crider's] rights to illegal search and seizure [sic] were violated under the Fourth Amendment of the United States Constitution and Ohio Constitution Article 1, Section 14.**

**Sixth Assignment of Error**

**[Crider's] Fifth Amendment rights were violated on two portions of the Due Process Clauses.**

**Seventh Assignment of Error**

**[Crider's] carbon copy indictments violated his Due Process and Double Jeopardy Rights**

{¶7} In the first assignment of error, Crider claims that the trial court erred by allowing him to represent himself at trial. The Sixth Amendment of the United States Constitution provides defendants in serious criminal cases a guarantee of the assistance of counsel.

> **Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty.**

*State v. Gibson*, 45 Ohio St.2d 366, 376, 345 N.E.2d 399 (1976) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 467-68, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938)). However, the Sixth Amendment also provides a defendant with the right to refuse the assistance of counsel and to represent himself at trial. *Id*. at 378. The only requirement is that the waiver of counsel be properly made. *Id*. "[T]o establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that

right." *State v. Owens*, 3rd Dist. Allen No. 1-07-66, 2008-Ohio-4161, ¶ 9. This court has previously held that to be effective, the "waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id*. at ¶ 10.

{¶8} In this case, the issue of Crider's decision to terminate his counsel was brought to the attention of the trial court when Crider made an outburst after the testimony of the victim by saying "Judge, I'm firing my lawyer." Tr. 305. The statement was made just before the jury was excused for a short break. Tr. 305. The trial court then had a discussion with Crider about the reasons for the statement.

> **[The Court:] Then the Court will inquire of you, Mr. Crider, since the indication was that you wish to fire Mr. Lippe. As I understand it, he is privately retained. Is there anything you want to say in that regard?**
>
> **Defendant: It was no more than a month ago when we come into Court and he didn't want to file for my discovery. He was on borderline of insufficient counsel then. Ask your prosecutors 'cause they're the ones that told him. I'm sitting here trying to tell him that this evidence – that the reason he's saying we didn't get the discovery is because he didn't want to give them any evidence, which I don't know how the law works, but I know he hasn't showed any evidence so there was no reason not to get the discovery. So, now I'm missing out because I don't have this discovery and he thinks he knows how to run something and all**

**he's doing is railroading me with the prosecution. Why don't he just go over there with them if he's going to do that?**

**\* \* \***

**The Court: I didn't hear an answer to my question, Mr. Crider. Are you telling the Court that – 'cause here's what's going to happen, Mr. Crider. We're going to continue with this trial. We're going to continue with this trial and either you're going to be represented by Mr. Lippe or not. I'm not going to grant a continuance for you to obtain new counsel.**

**Defendant: Then you're just going to railroad me with the rest?**

**The Court: No. I'm going to continue with the trial.**

Tr. 310-11. The trial court informed Crider that it would likely be in his best interest to continue with counsel, but informed him that he did have a constitutional right to continue the trial without counsel. Tr. 315. The trial court made it very clear that the trial would continue as scheduled and proceeded to question Crider about what he wished to do.

**The Court: You have an attorney. Mr. Lippe is –**

**Defendant: Supposedly have an attorney.**

**The Court: -- prepared to go forward.**

**Defendant: That's the reason I'm firing him is because he's insufficient counsel. We've already established he's borderline on that sir.**

**The Court: Are you actually firing him? He's your attorney. If you want to fire him, that's fine. But, if you fire him you're left with representing yourself.**

**Defendant:  Anything to railroad somebody; huh?**

**\* \* \***

**The Court:  Okay.  What the Court's going to do here is take a recess.  We'll take a recess until – I'm going to let the jurors go for lunch.  We'll take a recess until noon.  During that recess, Mr. Lippe and Mr. Crider, you can go over what's in the file, what's been filed as discovery.  At noon I will come back and the question will be, Mr. Crider, are you firing Mr. Lippe and –**

**Defendant:  I'm firing him now.  Insufficient counsel.  I don't care what you do.**

**The Court:  Okay.  You want to fire him?  You're saying to the Court unequivocally –**

**Defendant:  Yes.**

**The Court:  -- that you want to fire Mr. Lippe?**

**Defendant:    It's  insufficient  counsel.    They've  already established that it's borderline, sir.**

**The Court:  I'm just asking – are you saying unequivocally that you're firing Mr. Lippe?  He's privately retained.**

**Defendant:   For the third time – yes, sir.**

**The Court:  Okay.  Now, we're going to continue with the trial.**

**Defendant:   Whatever.  You're going to railroad me anyhow. Whatever.**

Tr. 316-19.

**{¶9}** After Crider repeatedly informed the court that he wished to terminate the employment of his attorney, the trial court held an extensive dialogue with Crider. The trial court asked Crider several times if he was familiar with the Ohio Rules of Evidence and the Ohio Rules of Criminal Procedure and Crider told him he was not. Tr. 319-22. The trial court explained to Crider that he would be held to the same standards as an attorney and that the trial court would not be functioning as his counsel. Tr. 321-23. Crider continued to state that he had no choice. Tr. 323. Next, the trial court went over the charges from the indictment and the potential maximum penalties of each. Tr. 323-25. When questioned, Crider stated that he understood what the maximum sentences could be if he were convicted. Tr. 325. The trial court also discussed the steps that are easier for a lawyer to accomplish than for a defendant, such as questioning witnesses, contacting witnesses, and performing legal research. Tr. 327-28. The trial court even suggested that self-representation was a poor choice. Tr. 328.

> **The Court: Now, I want to also tell you that in my experience almost in every case that I've ever seen, and there may be exceptions but I haven't run across them, that a trained lawyer would defend you far better than you could defend yourself. It's almost always unwise for a defendant to represent themselves. Do you understand that?**
>
> **Defendant: Yes, sir.**
>
> **The Court: Okay. Now in light of everything I've gone over – the charges, the potential penalties, the fact that there's going to**

**be rules, the fact that you're hampered because you're not a lawyer or trained as a lawyer – are you still saying that you want to fire Mr. Lippe?**

**Defendant: Insufficient counsel, sir, for the fourth time.**

**The Court: Are you saying you want to fire Mr. Lippe?**

**Defendant: Yes, I want to fire him for insufficient counsel. You can note it on the record.**

**The Court: Do you have any questions? Do you want me to clarify anything?**

**Defendant: No. This is your ballpark. Do what you want. You're going to anyhow.**

Tr. 329-30. After all this, the trial court accepted Crider's decision to terminate his counsel and to waive his right to an attorney.

**The Court: The Court has inquired of Mr. Crider. The Court has prepared, Mr. Crider, if you look this form over, it says that you have been advised that you have a right to be represented by counsel, you're electing not to be represented by your counsel, and you're going to proceed –**

**Defendant: No. I'm firing him for insufficient counsel, like the prosecutor said the last time we was in Court, sir.**

**The Court: Okay. By firing him you're electing not to have him here; right?**

**Defendant: Yes.**

**The Court: Okay, I'm going to ask – it's up to you, if you'll sign this waiver. It just indicates that you're electing to not have Mr. Lippe here. That's your choice. I mean, nobody is forcing you to fire him; right?**

**Defendant: No.**

**The Court: Okay. If you have a question about that, don't sign it until you get your questions answered. I'd be glad to answer.**

**(WHEREUPON, waiver of counsel form signed in open Court by defendant.)**

Tr. 330-331.

{¶10} On appeal, Crider argues that his waiver was not voluntary. However, a review of the record shows that he was asked multiple times whether this was a decision he really wanted to make. The trial court informed Crider that he had a right to be represented at trial, reviewed the charges and potential penalties, discussed the risks of proceeding unrepresented, and even warned him that this was a bad idea. The trial court also informed Crider before accepting the waiver that no continuance would be granted, so firing his counsel would mean proceeding unrepresented. Crider repeatedly stated that he wished to fire his counsel anyway. Crider was made aware of the risks, but chose to exercise his constitutional right to represent himself. The mere fact that he felt he had no choice but to proceed without counsel does not accurately reflect the situation. Crider had a choice: he could proceed with his retained counsel representing him or he could proceed representing himself. He may not have liked either one of the

choices but he did have a choice. Given the record before us, this court finds that Crider's waiver of counsel was valid. The first assignment of error is overruled.

{¶11} In the second assignment of error, Crider alleges that the trial court erred by denying his motion for a continuance. The decision to deny or grant a motion for a continuance is within the sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981).

> **In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.**

*Id.* at 67-68.

{¶12} A review of the record in this case shows that Crider requested a continuance after he terminated his counsel in order to have additional time to review the discovery. Tr. 340. The request for the continuance was made after a day and a half of trial. This oral motion was made despite the fact that the trial court repeatedly informed Crider that there would be no continuance merely because Crider wished to fire his counsel. The record reveals that the State had provided Crider with discovery on February 25, 2013. Doc. 67. Mr. Lippe informed the trial court that he had reviewed the discovery with Crider. Tr. 310,

-13-

313-14, 316-17. Additionally, at the hearing on December 4, 2012, Crider was present when his counsel indicated that they did not wish to seek discovery in order to avoid the reciprocal duty. Doc. 6. At no time did Crider object to not obtaining the discovery earlier. Based upon the record, it would appear that Crider contributed to the need for the delay and that a granting of the motion would inconvenience not only the parties, but the jury who had already sat through a day and a half of testimony. Thus, the trial court did not abuse its discretion in denying the motion for a continuance. The second assignment of error is overruled.

{¶13} Crider alleges in the third assignment of error that he was denied the effective assistance of counsel prior to the point where he fired his attorney.

> **In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.**

> **On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. See Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; * *915 State v. Jackson, 64 Ohio St.2d at 110–111, 18 O.O.3d at 351, 413 N.E.2d at 822.**

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999–Ohio–102, 714 N .E.2d 905.

**{¶14}** Here, Crider claims his counsel was ineffective for failing to file for discovery. A hearing was held on December 4, 2012, regarding defense counsel's failure to request discovery. At that time, counsel indicated that he was making a strategic decision not to request discovery and to trigger the reciprocal duties of discovery as set forth in Ohio Criminal Rule 16. The rule provides that "[o]nce discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures." Crim.R. 16(A). "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." *State v. Sallie*, 81 Ohio St.3d 673, 674, 1998-Ohio-343, 693 N.E.2d 267. While trial counsel's decision was highly unusual, the record does not reveal that it was unsound. Additionally, even if this action was not sound trial strategy, the effect would be harmless. Prior to trial, the State presented a discovery packet to Crider. Thus, Crider still received the discovery even though counsel did not request it.

**{¶15}** Crider also argues that counsel was ineffective because he did not discuss the discovery with Crider and for stating that Crider "should be referred to a mental health lock-up." Tr. 306. Although Crider made an argument that he was unaware of the discovery to the trial court, counsel indicated that he had reviewed the discovery with Crider. Crider, at various times, indicated that he knew about certain items that were in the discovery. One of the items in the discovery was a transcript from the preliminary hearing, at which the victim testified as to what happened and Crider was present. Doc. 67. This provided Crider the opportunity to hear what the testimony at trial would be. *Id*. He may not have had full knowledge of every item, but by his own statements Crider indicated that he had a general knowledge of what the evidence against him was. Crider has presented no indication and the record does not reveal that the alleged errors, if they were errors, were prejudicial. There is no basis for this court to determine that the alleged errors affected the outcome of the trial. Thus, Crider was not denied the effective assistance of counsel. The third assignment of error is overruled.

**{¶16}** In the fourth assignment of error, Crider claims that the trial court erred by imposing consecutive sentences without making the requisite findings on the record.

> **If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:**
>
> **(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**
>
> **(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**
>
> **(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

R.C. 2929.14(C). This court has held that the failure to make the specific findings required by the statute at the sentencing hearing is an error. *State v. Billenstein*, 3d Dist. Mercer No. 10-13-10, 2014-Ohio-255. Here, the trial court made all of the necessary findings in its journal entry. However, as the State concedes, these findings were not made at the sentencing hearing. This is not sufficient to comply with the statutory mandates. The fourth assignment of error is sustained.

{¶17} Crider argues in the fifth assignment of error that his Fourth Amendment right to be free from unreasonable search and seizure was violated. Crider claims that his rights were violated because he was arrested at 2:00 a.m., was taken to the jail, and placed in detention. Crider asserts that these actions placed him in custody. We agree that he was in custody.

{¶18} Initially this court notes that this claim was not presented to the trial court for review. An issue may not be raised for the first time on appeal. *State v. Kremer*, 3d Dist. Van Wert No. 15-05-05, 2006-Ohio-736 ¶ 7. Second, the record contains no evidence concerning the alleged incidents challenged. Thus, the issues cannot be raised on direct appeal, but would be more suitable for a petition for post-conviction relief. *State v. Lucas*, 3d Dist. Marion No. 9-05-31, 2006-Ohio-2508. Given that the record contains no evidence of the factual allegations stated by Crider, this court has no ability to review the issue. The fifth assignment of error is overruled.

{¶19} In the sixth assignment of error, Crider makes two arguments. The first is that his Fifth Amendment rights were violated when the police failed to inform him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Pursuant to the holding in *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the

use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. The Court in *Miranda* went on to hold that the procedural safeguards required providing the defendant with notice of what his or her rights were and giving the defendant the opportunity to exercise the rights. Absent the warnings concerning the rights, any statements made in response to interrogation were to be excluded from use at trial. Crider does not claim that any statements resulting from the interrogation were used against him. The record reveals that Crider did not make any statements to the police other than requesting an attorney and the State did not attempt to use any statements by Crider against him at trial. Thus, there was no error in this regard in this case from which to appeal.

{¶20} The second argument made by Crider was that he was not given adequate notice of the distinction between the counts. Initially, this court notes that Crider failed to raise this argument below and thus it could be ignored by this court. However, in the interest of justice, we will address it. A review of the indictment specifies the specific date upon which each of the separate and distinct offenses occurred and identifies the offenses charged. At no time did Crider request a bill of particulars. Crider presents this court with no argument on the allegation. Based upon the record before it, this court finds that the indictment

was sufficient to provide notice of each separate and distinct offense charged to Crider. The sixth assignment of error is overruled.

{¶21} The final assignment of error raised by Crider argues that the indictment was a "carbon copy" indictment[1] which violated his right to be free from double jeopardy. This argument, like the one in the sixth assignment of error addresses the question of notice and the effect of using identical counts in an indictment. The U.S. Supreme Court has previously set forth the requirements for a valid indictment. To be valid, an indictment 1) must contain the elements of offenses charged and 2) must sufficiently notify the defendant of "what he must be prepared to meet". *Russell v. United States*, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The Sixth Circuit has held that "multiple, undifferentiated charges in the indictment violated [a defendant's] rights to notice and his right to be protected from double jeopardy." *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005). However, in this case, there was not a "carbon copy" indictment. The time frame for each count was very specific. Counts 1 through 4 were stated to have occurred on September 1, 2012. Counts 5 through 8 were stated to have occurred on September 2, 2012. Although Counts 1 and 5 (rape) , Counts 2 and 6 (sexual battery), Counts 3 and 7 (kidnapping), and Counts 4 and 8 (gross sexual imposition) were identically named charges, they were alleged to have occurred on

---

[1] A "carbon copy" indictment is one which involves identical wide time frames and criminal charges with no differentiation. *Valentine,* 395 F.2d 626 (6th Cir. 2005).

different specific dates. Thus the indictment was not a "carbon copy" indictment as prohibited by the ruling in *Valentine*. The seventh assignment of error is overruled.

{¶22} Having found no prejudice in the particulars assigned and argued in assignments of error 1, 2, 3, 5, 6, and 7, the judgment as to those assignments of error is affirmed. The judgment as it relates to assignment of error 4 is reversed. The judgment is thus affirmed in part and reversed in part. The matter is remanded for further proceedings in accord with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**