DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Billy Gaskins, appeals from his convictions in the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On July 7, 2005, Appellant was indicted on one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree and two counts of unlawful sexual conduct with a minor, in violation of R.C.2907.04, felonies of the third degree. The two minor victims involved in the case are "CM" and "KR." Appellant was charged with rape and unlawful sexual conduct with CM and unlawful sexual conduct with KR. *Page 2 
 {¶ 3} Appellant waived his speedy trial rights. His case was scheduled to proceed to trial on June 27, 2006. On June 26, 2006, the trial court held a hearing on Appellant's motion to remove his counsel. At the hearing, Appellant requested alternatively that his appointed counsel be removed, that he be provided with co-counsel, or that he be permitted to proceed as his own co-counsel. In addition, Appellant's counsel filed a request to be removed as counsel of record. The trial court denied both motions.
 {¶ 4} Appellant's case proceeded to trial before a jury on June 27, 2006. Appellant again sought to discharge his attorney during trial and then requested a continuance to find a new attorney. The trial court denied both requests. The jury convicted Appellant of the rape charge and the count of unlawful sexual conduct with a minor pertaining to CM. The jury acquitted Appellant on the unlawful sexual conduct charge pertaining to KR. Appellant was sentenced to five years incarceration. Appellant timely appealed his convictions, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I *Page 3 "THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT APPELLANT'S RAPE AND UNLAWFUL SEXUAL CONDUCT WITH A MINOR CONVICTIONS, AND THOSE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his first assignment of error, Appellant argues that insufficient evidence was produced to support the jury's verdict and that his conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will Court of Appeals of Ohio, Ninth Judicial District *Page 4 
also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 8} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} Appellant was convicted of one count of rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree and one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), a felony of the third degree. R.C. 2907.02(A)(2), provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.01(A) defines "sexual conduct" to include "the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity of another" without privilege to do so. R.C. 2907.04(A) states that "[n]o person who is eighteen years of age or older shall engage in sexual conduct *Page 5 
with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."
 {¶ 10} CM testified on behalf of the State. CM testified as follows. On Tuesday, June 21, 2005, CM, who was thirteen years old[1], and her mother, Tammy M. ("Tammy"), drove to Hickory Hills apartment complex in Brunswick, Ohio to pick up CM's friend, KR. CM planned to ask KR's mother to allow KR to sleep over at her house. KR was fourteen years old at the time. Tammy waited in the car as CM walked to KR's apartment to see if she was home. Appellant lived in the same apartment complex as KR's family. Appellant approached Tammy while she was waiting in the car. He asked her if she was waiting for her boyfriend. Tammy explained that she was waiting for her daughter. In response to additional questions from Appellant, Tammy told him her daughter's name. KR and CM came out to the car and Appellant told Tammy that he knew her daughter. CM told Tammy that KR wanted to sleep at her own house because another friend was there. She invited CM to sleep over at her residence. CM decided to stay at KR's apartment for the night.
 {¶ 11} While CM was at KR's apartment, Appellant came over to visit. Around midnight, CM, KR and her nine or ten year old brother, "JW", went to Appellant's apartment. CM explained that Appellant had been chasing someone *Page 6 
outside and had become sweaty. Consequently, once they arrived at Appellant's apartment, he went to his bathroom to shower. CM testified that Appellant wanted KR, JW and CM to spend the night. After Appellant finished showering, CM and KR went into Appellant's bedroom and sat on the floor to talk out of earshot of Appellant and JW. The bedroom was dark except for the moonlight. At some point, Appellant brought glasses of beer for the two girls. The girls consumed at least some of the beer. Appellant had been drinking that evening and had also smoked marijuana. The situation made CM feel uncomfortable.
 {¶ 12} After providing beer for the girls, Appellant left the apartment briefly. When he returned, he told the girls that KR's parents gave them permission to sleep at his apartment. At this point, CM and KR were lying on their stomachs talking. Appellant began to massage their backs. CM was uncomfortable with Appellant touching her in this way and she kept moving away from him. Appellant continued to rub their backs, eventually placing his hand down CM's pants. Appellant then digitally penetrated CM. CM rolled onto her back. At that point, Appellant pulled her pants down and unzipped his pants. Appellant then vaginally raped CM. CM testified that she was pushing Appellant off of her, "telling him to stop." CM specifically testified that she did not want Appellant to perform sexual acts on her. *Page 7 
 {¶ 13} CM stated that while these events were transpiring, KR was "rolled up on the corner facing the window" and that "it looked like she was crying." CM stated that when Appellant was finished, he lay on the bed. She got up, put on her pants and grabbed KR's arm. KR got up and pulled CM into the bathroom. KR asked CM if she wanted to leave and CM said yes. As the two were preparing to leave, Appellant asked to talk with KR. When KR returned, the two girls walked to KR's apartment. CM remained at KR's house for a few days following the incident. During this time, the girls encountered Appellant at the pool where they were swimming. When the girls saw Appellant, they swam to the deep end of the pool to distance themselves from him. The girls did not speak to Appellant and Appellant did not speak to the girls during this encounter. A few days later, CM told her parents about her incident with Appellant. CM's parents called the police. After CM met with the police, her parents took her to the hospital for an examination.
 {¶ 14} CM testified that she had never seen Appellant before June 21, 2005. CM further testified that she did not tell Appellant that she was eighteen years old or any age older than that. CM testified that when she first arrived "at the house, he asked if I went to [KR's] school, and I told him, yes."
 {¶ 15} KR also testified at trial. KR testified that, at the time of the incident, Appellant had known her and her family for about four years. KR stated that Appellant frequently visited her apartment. She estimated that he came over *Page 8 
"[a]t least a couple times a day." KR testified that she did not tell Appellant that she was eighteen, twenty or twenty-two years old. She testified that Appellant knew her age.
 {¶ 16} KR's testimony regarding the incident mirrors CM's. KR testified that late in the evening on the night in question, she, CM and JW went over to Appellant's apartment to retrieve something. Appellant then showered while JW played a videogame. After Appellant finished showering, KR and CM went into the bedroom to talk. The two girls sat on the floor. Appellant later brought each of the girls a cup of beer. KR testified that neither she nor CM drank any of the beer. She also testified that Appellant smoked marijuana.
 {¶ 17} KR stated that Appellant left the apartment at some point. When he returned, he told her that she, JW and CM were permitted to spend the night at his apartment. Appellant then began rubbing the girls' backs. KR testified that "[i]t felt weird." KR stated that in response to Appellant's actions, she "[k]ind of moved a little." She testified that Appellant then started to place his hand down both of their pants. KR stated that Appellant digitally penetrated her. She testified that she did not say anything to him. She also stated that she observed Appellant roll CM over and pull her pants down. She heard CM tell Appellant to "[s]top" and observed CM try to push Appellant away from her. KR testified that Appellant "was having sex with her." KR testified that during this time, she was "laying by the window and [she] started to cry." *Page 9 
 {¶ 18} After Appellant was finished, CM pulled on her pants and grabbed KR by the arm. CM told KR she was scared and wanted to go home. Before the girls left, Appellant asked KR to come into the bedroom and told her "he wished it would have been me instead of her." The girls left the apartment and headed to KR's apartment. KR's mom let them into the apartment. Once inside, KR told her mom she had a headache. Her mom gave her some aspirin and the two girls went to bed. She did not tell her mother about the incident.
 {¶ 19} KR's mother, Tina W. ("Tina"), also testified. Tina testified that she has lived in the same apartment complex for about five years. She explained that she has known Appellant for approximately four years. She stated that Appellant has spent a significant amount of time with her family and that he had visited her family's apartment many times. She testified that Appellant knew her children well. She also testified that on the night of the incident, Appellant came over around 1:30/2:00 a.m. to ask Tina whether the girls and JW could stay the night at his apartment. Appellant told her that they were all still playing a videogame. Tina said that they could stay. Later that night she was awakened by a phone call from her daughter who needed to be let into the apartment. Tina opened the door for the girls. She testified that KR was crying. KR told her that she had a headache. Tina gave her some medicine and told her to go to sleep.
 {¶ 20} Jennifer Akbar, a forensic scientist from the Ohio Bureau of Criminal Identification and Investigation ("BCI") also testified for the State. Ms. *Page 10 
Akbar examined the rape kit from CM as well as the clothes from both victims. She discovered sperm cells on the inside of CM's pants. Test results confirmed that the sperm on CM's pants was Appellant's. The rape kit test results came back negative for the presence of semen inside of CM. Mr. Akbar testified that a sample from a rape kit is less likely to reveal semen the more time passes. She additionally testified that the fact that CM showered after the incident made detection unlikely.
 {¶ 21} Officer Keleman also testified for the State. Officer Keleman testified that he responded to the call from CM's parents on June 25, 2005. He testified that he spoke with CM and her parents and collected the clothing she wore on the night of the incident. The clothes had not been washed. Officer Keleman advised CM's parents to take CM to the hospital for an examination. He further testified that he asked CM whether she had bathed since the incident and she informed him that she had. Officer Keleman testified that Sgt. McDermott reviewed the statements and determined there was enough cause to arrest Appellant. Officer Keleman attempted to serve the search warrant. The officers noted that although Appellant's vehicle was at the residence, he was not there.
 {¶ 22} Officer Safron also testified for the State. He also responded to Appellant's apartment on the day the incident was reported. Officer Safron testified that there was a vehicle located at the complex on this date that was registered to Appellant. He stated that Appellant was not at home. He returned *Page 11 
four days later and the vehicle was gone. He attempted to find Appellant at the apartment on a few additional occasions. He also attempted to find Appellant at his mother's residence and at his ex-girlfriend's residence. Officer Safron was unable to locate Appellant.
 {¶ 23} Appellant testified and presented three witnesses on his behalf. One of his witnesses, Tiffany Harris, testified regarding photographs she took of CM after the incident occurred. Ms. Harris had been friends with Appellant for several years. She testified that she had known CM for a few years but that she became better friends with CM a week or so after the incident. Ms. Harris set up a webpage for CM on the website MySpace wherein she posted the pictures she took of CM. Ms. Harris admitted that she published defamatory statements about CM on the internet after the incident occurred. The two girls are no longer friends.
 {¶ 24} Appellant's remaining witnesses testified regarding KR. As Appellant was acquitted of the charge related to KR, we need not examine this testimony. Appellant's testimony differs largely from that of the State's witnesses.
 {¶ 25} Appellant testified that on the night in question, he and JW went to his apartment to play videogames. He did not invite CM and/or KR. Once there, he showered. When he exited the shower into his bedroom, he was startled to find CM and KR there. He asked the girls to leave the room while he changed. The *Page 12 
girls asked him if they could have some beer. He let them split one. Later that evening, he went to his bedroom where he found KR and CM lying on their stomachs talking. He initially testified that the girls were lying on their backs. He later clarified that they were lying on their stomachs. The girls asked him if he would give them backrubs. He obliged and applied cocoa butter while he gave both girls backrubs. Appellant testified that KR told him that she was eighteen and that CM specifically told him that her birth date was 8/18/87. He later testified that the date she told him was 6/19/87. He also testified that CM looked older than KR. He testified that he was attracted to CM and that "she turned [him] on." At some point, CM started touching his penis and she eventually masturbated him. He testified that she wiped the semen on her pajama pants. He testified that she told him she was interested in him. Appellant denied touching either girl below her waist. He testified that KR asked him if he wanted to engage in group sex but he declined. Appellant never asked KR how old she was.
 {¶ 26} Having reviewed the record and considered Appellant's challenges to the State's evidence, we do not think the jury clearly lost its way and created a manifest miscarriage of justice in finding Appellant guilty of rape and unlawful sexual conduct with a minor. It is not difficult to conclude that Appellant forced CM to have sex with him. CM testified that after Appellant digitally penetrated her, he removed her pants and forced her to have sex with him. CM's testimony was supported by evidence that semen was detected inside her pants. The physical *Page 13 
evidence contradicts Appellant's story that CM masturbated him and wiped the semen on the outside of her pants. CM further testified that she physically resisted and told Appellant to stop.
 {¶ 27} CM's testimony that Appellant digitally penetrated her satisfied the elements of sexual conduct with a minor. CM was clearly not Appellant's spouse. Further, the jury could reasonably infer that Appellant knew, at least approximately, CM's age. At the very least, Appellant was reckless in his disregard of CM's age. CM denied ever telling Appellant that she was eighteen years old. CM testified that Appellant asked her if she went to school with KR and she told him that she did. KR, CM, and Tammy testified that Appellant was talking with Tammy when Tammy dropped CM off at KR's on June 21, 2005. Appellant also testified that he witnessed CM with her mother on that day and that her mother was driving. In light of the fact that CM was not driving and her mother had to drive her to KR's apartment, Appellant could have logically inferred that CM was not old enough to drive. Moreover, KR, her mother and brother all testified that they had known Appellant for several years. It is reasonable to infer that Appellant knew or should have known KR's age. Consequently, Appellant should have known the age of KR's friend with whom she attended school. Even if he did not know CM's actual age, Appellant was reckless with his disregard of her age. *Page 14 
 {¶ 28} CM and KR's testimony also establishes the elements of rape. CM and KR testified that CM told Appellant to stop when he began trying to have sex with her. Both girls testified that CM tried to push Appellant off of her. Such conduct satisfies the element of force under R.C.2907.02(A)(2).
 {¶ 29} In sex offense cases, this and other courts have consistently held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration. State v.Matha (1995), 107 Ohio App.3d 756, 759, citing State v. Lewis (1990),70 Ohio App.3d 624, 638. See State v. Economo (1996), 76 Ohio St.3d 56, syllabus. Thus, the testimony of the victim may be enough, and does not need corroborating evidence. However, CM's testimony was fully corroborated by KR. Moreover, CM's version of the incident was corroborated by evidence that Appellant's semen was discovered inside her pants. It is also believable that a medical examination conducted a few days later would reveal no signs of trauma and no DNA evidence, given that CM showered and swam after the incident.
 {¶ 30} Based on the evidence in the record, we cannot say that the jury clearly lost its way in finding Appellant guilty of rape and unlawful sexual conduct with a minor. Thus, the verdict was not contrary to the manifest weight of the evidence. As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2. Necessarily included in this Court's determination that the jury *Page 15 
verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. Id. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING RELEVANT EVIDENCE OF THE ALLEGED VICTIM OF THE CHARGED UNLAWFUL SEXUAL CONDUCT WITH A MINOR OFFENSE HOLDING HERSELF OUT AS BEING AT LEAST EIGHTEEN YEARS OF AGE ON THE INTERNET SITE `MYSPACE.COM.'"
 {¶ 31} In his second assignment of error, Appellant contends that the trial court abused its discretion by excluding evidence that CM held herself out as an eighteen year old on a website. We disagree.
 {¶ 32} It is well established in Ohio that "`[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" (Alterations sic.) State v. Robb (2000),88 Ohio St.3d 59, 68, quoting State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. See, also, State v. Yeager, 9th Dist. No. 21510,2005-Ohio-4932, at ¶ 15. An appellate court will not disturb a trial court's ruling as to the admissibility of evidence absent an abuse of discretion and a showing of material prejudice by the opposing party.Yeager, at ¶ 15, citing State v. Martin (1985), 19 Ohio St.3d 122, 129.
 {¶ 33} At trial, Appellant sought to introduce evidence that CM held herself out as an eighteen year old on the website MySpace and further that she held *Page 16 
herself out as having been in a sexual relationship with an adult. The record reflects the following exchange regarding this evidence:
 Appellant's counsel: "I would have liked to question [CM] with respect to [MySpace.com], eliciting testimony about [CM] having a site on [MySpace.com], that she held herself out as being significantly older than she is, perhaps eighteen or older, and she would have held herself out as having been in a sexual relationship with someone who is an adult.
 "I would offer that, and would like it admitted in order to show that [CM] was holding herself out to the world, including my client, as someone older than she is.
 Court: "But you have no evidence he saw this?
 Appellant's counsel: "That is correct.
 Court: "You don't know if it was done before the date of the assault?
 Appellant's counsel: "That is correct, Your Honor."
The trial court later reiterated its position on this evidence, stating:
 Court: "The problem is not what she looked like in February [2006] or October. The problem is what she looked like on June 23rd, that is the relevance, that is the relevant thing.
 "In other words, the State of Ohio is arguing that he was reckless, that either he knew the age of the victims, the alleged victims, or he was reckless with regard to their age.
 "So therefore what becomes relevant is how they looked around June 23rd, not how they looked like in October, not how they looked like in February, not how they looked in December, but how they looked around June of 2005."[2] *Page 17 
 {¶ 34} Here, the trial court permitted introduction of the photographs that were posted on the MySpace website. Further, the trial court permitted Appellant's friend, Ms. Harris, to testify regarding the photographs and whether they accurately depicted what CM looked like at the end of June 2005. The court merely prohibited questioning regarding the website. Appellant's counsel agreed that he had no proof that Appellant ever saw the website. More importantly, neither party disputed that this website was created after the incident in question. Whether CM represented herself as eighteen years old after the incident occurred is not relevant. This case centers around Appellant's belief regarding CM's age at the time of the incident. Accordingly, we find no abuse of discretion in the trial court's exclusion of this evidence.
 {¶ 35} Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY DENYING APPELLANT'S MOTIONS TO FIRE APPOINTED COUNSEL AND OBTAIN NEWLY APPOINTED COUNSEL OR, IN THE ALTERNATIVE, TO SERVE AS HIS OWN CO-COUNSEL, WHERE THERE WAS A SEVERE BREAKDOWN IN THE ATTORNEY-CLIENT RELATIONSHIP PRIOR TO TRIAL WHICH WAS EVIDENT DURING TRIAL."
 {¶ 36} In his third assignment of error, Appellant contends that trial court erred in violation of his Sixth Amendment right to effective assistance of counsel *Page 18 
by denying his motions to fire his counsel and obtain new counsel or serve as his own co-counsel. We find no merit in this contention.
 {¶ 37} A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. See McMann v.Richardson (1970), 397 U.S. 759, 771, fn. 14. A two-step process is employed in determining whether the right to effective counsel has been violated.
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 38} "An appellate court may analyze the prejudice prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Kordeleski, 9th Dist. No. 02CA008046, 2003-Ohio-641, at ¶ 37, citing State v. Loza (1994),71 Ohio St.3d 61, 83.
 {¶ 39} On appeal, Appellant contends that the trial court violated his right to effective assistance of counsel because substitute counsel should have been appointed or he should have been permitted to serve as his own co-counsel. He claims that there was a complete and utter breakdown of the attorney-client relationship, which was demonstrated by the fact that counsel failed to subpoena *Page 19 
and call witnesses requested by Appellant and failed to ask questions requested by Appellant.
 {¶ 40} An indigent defendant has no right to his choice of counsel.State v. Murphy (2001), 91 Ohio St.3d 516, 523. Furthermore, there is no right to a "`meaningful attorney-client relationship.'" Id., quotingMorris v. Slappy (1983), 461 U.S. 1, 13-14. An indigent defendant must establish good cause in order to justify appointment of substitute counsel. Id., citing State v. Cowans (1999), 87 Ohio St.3d 68, 72.
 {¶ 41} The trial court has discretion to deny requests found to be unreasonable, and thus, such decision is only reviewed for an abuse of discretion. Id. The court should weigh the defendant's interests in receiving new counsel against the public's interest in the prompt and efficient administration of justice. Id. A "`total lack of communication preventing an adequate defense'" is a factor to be considered. Id., quoting United States v. Jennings (C.A.6, 1996), 83 F.3d 145, 148. In order to warrant replacement counsel, the breakdown in the attorney-client relationship must be of such a magnitude as to jeopardize the defendant's right to effective assistance of counsel.State v. Coleman (1988), 37 Ohio St.3d 286, 292.
 {¶ 42} First and foremost, we note that there is no right to hybrid representation in Ohio. State v. Martin, 103 Ohio St.3d 385,2004-Ohio-5471, at ¶ 32 (holding that "[t]oday we reaffirm and hold that in Ohio, a criminal defendant *Page 20 
has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously"). Accordingly, Appellant's claim that he should have been permitted to proceed as his own co-counsel has no merit.
 {¶ 43} Appellant's claim that the trial court erred in denying his motions to discharge his counsel similarly has no merit. First, Appellant did not ask for a continuance in order to retain counsel until June 26, 2006, the day before trial. The decision to grant or deny a continuance is also entrusted to the broad discretion of the trial court. State v. Unger (1981), 67 Ohio St.2d 65, 67. The court can consider the length of the delay requested, whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court, whether the requested delay is for legitimate reasons or a delaying tactic, whether the defendant contributed to the circumstance which gave rise to the request for a continuance, and other relevant factors depending on the unique facts of the case at hand. Id. at 67-68. Here, the efficient administration of justice called for denial of the last minute motion for a continuance to attempt to hire a private attorney. The parties had subpoenaed several witnesses who were set to appear the next day. Both parties were prepared for trial and Appellant could not articulate a legitimate basis for his request.
 {¶ 44} Secondly, Appellant's counsel clearly provided competent representation. Appellant was acquitted on one charge of unlawful sexual conduct *Page 21 
with a minor. Even if Appellant's counsel failed to ask each and every question Appellant requested, this would not constitute a total breakdown in communication. Nor does it establish that an adequate defense could not arise from the relationship. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel." State v. Jeffers, 10th Dist. No. 06AP-358,2007-Ohio-3213, at ¶ 42, citing State v. Phillips (1995),74 Ohio St.3d 72, 85. "Reviewing courts must not use hindsight to second-guess trial strategy, and must bear in mind that different trial counsel will often defend the same case in different manners." Jeffers, supra, citingStrickland, 466 U.S. at 689.
 {¶ 45} Appellant provides no specific support for his general assertions that his counsel was unprepared, failed to subpoena and call certain witnesses and failed to ask specific questions. "If an argument exists that can support [Appellant's contentions], it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. No. 18349, at *8. Without more, we cannot find that the trial court erred in failing to grant Appellant's motion to terminate his counsel.
 {¶ 46} The trial court heard Appellant's claims and heard counsel's presentation of the case. The court could properly determine whether there was a breakdown of communication of such magnitude that would jeopardize Appellant's right to effective assistance of counsel. Considering the timing and the statements placed on the record, the court's decision is not unreasonable, *Page 22 
unconscionable or arbitrary. See State v. Glasure (1999),132 Ohio App.3d 227, 239 (where this court held that only the most extreme circumstances require substitution of appointed counsel). Appellant's third assignment of error is overruled.
 III. {¶ 47} Appellant's three assignments of error are overruled, and the judgment of the Medina County Court of Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 23 
Costs taxed to Appellant.
DICKINSON, J., REECE, J.,CONCUR.
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] CM turned fourteen on July 19, 2005.
[2] The trial court later clarified that the date of the rape was June 22, 2005. *Page 1