DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Jose A. Martinez, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} Jose A. Martinez and Vilma Martinez both came to the United States from El Salvador in 1996, and later married one another in 1997. Both speak limited English and communicate with one another in Spanish. The couple have three children together and were separated in 2003, but reconciled again in 2005. They ultimately divorced in April 2007. Following the divorce, Jose exercised regularly scheduled visitation with his children and picked them up from Vilma on alternating weekends, the last of which occurred on May 11, 2007.
 {¶ 3} On May 25, 2007, Vilma was at home with her children when her phone rang shortly after 11:30 p.m. Jose called her, then subsequently appeared at her house. Although the parties testified to differing events that occurred once Jose reached Vilma's house, shortly after *Page 2 
midnight Vilma called 911 because Jose had broken in and sexually assaulted her, and she was concerned he was still in the house. Police arrived and searched the house, but did not find Jose inside. While the police were discussing the incident with Vilma, Jose returned to the house. He told police that he had returned to retrieve his keys, wallet, and cell phone. He further informed the police that Vilma had initially requested he come over because their daughter was sick and because Vilma wanted to engage in consensual sex. That night, the police photographed red marks on Vilma's legs, which were re-photographed by detectives days later and showed bruising on either side of her thighs. Police arrested Jose that night on charges of domestic violence. Jose phoned Vilma from jail following his arrest several times. Two days after his arrest, Vilma accepted a collect call from Jose where he invoked her help in posting the bond for his release, which she declined to do.
 {¶ 4} On June 22, 2007, the grand jury indicted Jose on the following counts: aggravated burglary, pursuant to R.C. 2911.11(A)(1); attempted rape, pursuant to R.C. 2923.02/2907.02(A)(2); domestic violence, pursuant to R.C. 2919.27(A) and 2919.25(C); kidnapping, pursuant to R.C. 2905.01(A)(3) and (4); and violation of a protection order, pursuant to R.C. 2919.27. The State dismissed the kidnapping and violation of a protection order counts before trial.
 {¶ 5} On November 14, 2007, the matter proceeded to trial where a jury found Jose guilty of attempted rape and two counts of domestic violence. He was sentenced to two years in prison and five years of post-release control and was determined to be a sexually-oriented offender. Jose was found not guilty on the aggravated burglary count.
 {¶ 6} On January 9, 2008, Jose filed his notice of appeal. Jose's appeal is now before this Court and raises two assignment of error for our review. *Page 3 
 II Assignment of Error Number One "JOSE MARTINEZ WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL, AS WELL AS HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AS CONTAINED IN THE UNITED STATES CONSTITUTION AND HIS OHIO CONSTITUTIONAL RIGHTS UNDER SECTION 16, ARTICLE I, WHEN HIS COUNSEL FAILED TO PRESENT EXCULPATORY AND PROBATIVE EVIDENCE AT HIS TRIAL TO PROVE HIS DEFENSE AT TRIAL."
 {¶ 7} Jose argues that he was denied the effective assistance of counsel because his counsel failed to have phone call transcriptions admitted into evidence. We disagree.
 {¶ 8} A two-step process is employed in determining whether the right to effective counsel has been violated.
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
This Court, however, "may analyze the prejudice prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Gaskins, 9th Dist. No. 06CA0086-M, 2007-Ohio-4103 at ¶ 38, quoting State v. Kordeleski, 9th Dist. No. 02CA008046, 2003-Ohio-641, at ¶ 37. To show prejudice, Jose is required to prove to this Court that, "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 9} Jose argues that the phone call he had with Vilma while he was in the Summit County Jail contains exculpatory information and that his counsel's failure to have the calls *Page 4 
translated from Spanish to English and then admitted into evidence constitutes ineffective assistance of counsel. Jose argues that, because the majority of the evidence presented at trial was in the form of witness testimony, it was essential for defense counsel to present evidence attacking Vilma's credibility and aiding Jose's, and that when counsel learned on the morning of the trial that there was insufficient time to fully transcribe the tape, that counsel should have requested a continuance. Jose also points to the fact that, because the interpreter just received the tape of the call the night before the trial and returned the next day stating that it would take nearly 20 hours to prepare a full transcription report of it in accordance with the interpreter's professional code of ethics, that counsel was unprepared to defend him at trial. He further argues that counsel was ineffective because she did not have the tape played to the jury and interpreted during the trial in an attempt to discredit Vilma. Jose contends that the call contains numerous examples of Vilma's questionable credibility, including her willingness to pay $25 to accept Jose's collect call; her acknowledging that she is aware Jose has a girlfriend; her admitting she was glad he was incarcerated; and her failure to admit or deny that Jose attempted to rape her.
 {¶ 10} This Court considers counsel's failure to have the jail calls translated and admitted into evidence as a tactical decision, and we have long recognized that such tactical decisions do not constitute ineffective assistance of counsel. State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. Jose's counsel was fluent in Spanish, had listened to the jail call, and was aware of the content of the conversation. Instead of delaying trial to allow for the tape to be translated, there was specific conversation, on the record, where counsel requested and received permission to question Vilma as to the statements she made during the jail call. During counsel's cross-examination about the jail call, counsel even stated "let me go a little farther before we play the tape if need be," suggesting counsel was prepared, if necessary, to *Page 5 
request the jail call be played and translated by the interpreters present at the trial. For whatever reasons, counsel chose not to do so. The decision to exclude the jail call transcription does not demonstrate to this Court that counsel's performance at trial fell below the standard espoused in Strickland. Given her ability to speak and understand Spanish, counsel knew the content of the tapes, discussed the matter of the tapes with the court more than once, and ultimately chose not to have the tapes translated. In light of the extent to which both Vilma and Jose were questioned on direct and cross examination about the contents of jail call, we do not believe that Jose's counsel was ineffective for not having the jail call translated and admitted into evidence. Jose's first assignment of error is overruled.
 Assignment of Error Number Two "MR. MARTINEZ'S CONVICTION FOR ATTEMPTED RAPE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} On appeal, Jose argues that his conviction for attempted rape is against the manifest weight of the evidence. We disagree.
 {¶ 12} When considering a manifest weight argument, the Court:
 "[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issues than supports the other. State v. Thompkin s (1997), 78 Ohio St. 3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. *Page 6 
 {¶ 13} On appeal, Jose argues that the evidence in the case is a matter of "he said, she said" with "little to no credible physical evidence to corroborate [Vilma's] story." Jose simply maintains that this Court should consider his version of the facts from that night to be true, instead of Vilma's.
 {¶ 14} Jose testified that Vilma called him asking he come over to her house because their daughter was ill and to have consensual sex. He states that when he declined her invitation, she threatened to tell his employer and immigration authorities that he has been using a false name, so he decided to go to her house. Jose states that he arrived shortly before midnight, found the door open, and proceeded inside, where the two engaged in consensual sex. When he had to suspend their activities to use the restroom, he returned to find Vilma upstairs crying, at which point she told him to leave and that she had called the police. Jose testified that Vilma informed him she called the police because she had learned Jose had a girlfriend and that she had seen her at his house frequently. She then threw his pants at him and told him to leave. Jose stated that he remained at the house for 10-15 minutes waiting for the police, but then thought Vilma must have been joking, so he left to head back to his house. When he arrived there, he realized that he had forgotten his cell phone and keys at Vilma's house, so he returned. The police were at the house when he arrived. Jose told police that he had been there recently and requested his keys and cell phone. Jose testified that he lied to the police that night about what had happened because he didn't want Vilma to know that he had a girlfriend. Police found a key to Vilma's house on Jose's keychain, but were unable to locate Jose's cell phone. Jose's girlfriend, Sarah Wadas, also testified at trial, claiming that Vilma answered Jose's cell phone when she called it the day after his arrest. Sarah admitted, however, that she had never spoken to Vilma before, despite claiming to be able to recognize her voice. *Page 7 
 {¶ 15} Vilma's testimony as to the events of that night differs widely. Vilma testified that after she heard the phone ring that night, she heard a noise downstairs and found Jose in her house when she went down to investigate. She stated that he told her he was there to have sex, and when she declined, he began trying to pull down her shorts and punching the sides of her legs. She testified that when she pushed him away, he headed toward the kitchen and stated that he was going to kill her. At that point she ran to her room, locked the door, and called 911.
 {¶ 16} At trial, the jury listened to the 911 call and viewed photographs taken of Vilma's legs that night, as well as those taken days later. Akron Police Officer Carlton Starks noted that "she was definitely visibly shaken" and scared when he arrived at Vilma's house on the night of the incident. He noted that initially Vilma would not answer the door, so he had to have the police dispatcher call Vilma to tell her to let the officers into the house. Additionally, Officer Starks stated that it was "obvious" that Jose was avoiding answering police questions. Akron Police Officer Vincent Tassiello also testified regarding the night's events, recalling that Vilma appeared "very scared, very nervous" and that "[s]he was pretty sure [Jose] was still in the house." He testified that she looked like she had been crying and that she was talking very fast, so he was trying "to slow her down [and] calm her down." Officer Tassiello recalled that her thighs had a "slight redness * * * enough [that he] took a photo of it to document it."
 {¶ 17} Given the conflicting testimony on what happened once Jose arrived at Vilma's house, this Court is not compelled to disturb the jury's determination of either witnesses' credibility. Specific to the convictions based on a sexual offense, this Court has "consistently held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration." State v.Gaskins, 9th Dist. No. 06CA0086-M, 2007-Ohio-4103, at ¶ 29. See, also,State v. Economo (1996), 76 Ohio St.3d 56, syllabus. Even if this case is largely *Page 8 
one of "he said, she said" as Jose contends, the jury believed what Vilma said, and Jose has not set forth any corroborating evidence as to why this Court should disrupt that finding, other than reiterating to us what "he said."
 {¶ 18} After reviewing the record in its entirety, this Court is not convinced that Jose's attempted rape conviction is against the weight of the evidence. Consequently, Jose's second assignment of error lacks merit.
 III {¶ 19} Jose's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 9 
Costs taxed to Appellant.
 SLABY, J. MOORE, P. J. CONCUR *Page 1