[Cite as *State v. Hendrix*, 2025-Ohio-1556.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 114406 |
| MATTHEW HENDRIX, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 1, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676488-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jamielle Lamson-Buscho, Assistant Prosecuting Attorney, *for appellee.*

P. Andrew Baker, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Matthew Hendrix, appeals his convictions for rape and attempted rape, following a jury trial. For the reasons that follow, this court affirms.

## I.   Procedural History

{¶ 2}   In December 2022, the State charged Hendrix with seven counts of rape, in violation of R.C. 2907.02(A)(1)(b); each count included a sexually violent predator specification.  Counts 1, 2, and 3 all involved the same victim and alleged that Hendrix engaged in sexual conduct — digital penetration (Count 1), cunnilingus (Count 2), and vaginal intercourse (Count 3) — with a minor who was under the age of 13 at the time of the offenses ("Victim 1").  Counts 4, 5, and 6 all involved the same victim and alleged that Hendrix engaged in sexual conduct, to wit:  vaginal intercourse, with a minor under the age of 13 at the time of the offense ("Victim 2").  Count 7 alleged that Hendrix engaged in sexual conduct, to wit: digital penetration, with a minor under the age of 13 at the time of the offense ("Victim 3").

{¶ 3}   Hendrix pleaded not guilty, and a jury considered testimony from each of the victims, the mother of two of the victims, the victims' grandmother, and the detective who inherited the case from her predecessor.  Hendrix also testified in his defense.  The testimonies of these witnesses will be discussed more fully below.  But the testimonies established that during the relevant time periods specified in the indictment, Hendrix lived with his stepfather, who was the victims' grandmother's boyfriend.  During some of the timeframes in the indictment, the victims' grandmother lived with her boyfriend and Hendrix.  When the first allegation of rape occurred in 2010, Hendrix would have been 16 years old, and when the last incident occurred in 2017, he would have been 23 years old.

{¶ 4} Following the close of the testimony, the State, over objection, amended Count 1 by adding the attempt statute, R.C. 2923.02, to the rape offense. The jury found Hendrix not guilty of rape as charged in Count 7, but guilty of the remaining offenses. The jury then considered the sexually violent predator specifications, finding Hendrix guilty of being a sexually violent predator as charged in amended Count 1, but not guilty of the specifications as charged in the remaining offenses.

{¶ 5} The trial court ordered Hendrix to serve a prison sentence of 18 years to life.

## II. The Appeal

{¶ 6} Hendrix now appeals, raising two assignments of error.

### A. Sufficiency of the Evidence

{¶ 7} In his first assignment of error, Hendrix contends that the State presented insufficient evidence to sustain his convictions in Counts 2 and 4.

{¶ 8} Under sufficiency review, this court is required to determine whether the prosecution met its burden of production at trial. *State v. Cottingham*, 2020-Ohio-4220, ¶ 32 (8th Dist.). An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

### 1. Count 2 — Victim 1

{¶ 9} Count 2 alleged that on or about January 1, 2016, to January 31, 2016, Hendrix engaged in sexual conduct, to wit: cunnilingus, with Victim 1, who was under the age of 13 at the time of the offense. Hendrix contends that the timeframe in which the victim testified that this incident occurred does not correlate with the indictment as charged. He acknowledges that while an exact date is not an essential element to sustain a rape conviction, the elements of the offense must correlate to the specific timeframe charged in the indictment. According to Hendrix, Victim 1's testimony regarding the timing of this incident, the second rape, did not conform with the indictment — January 1, 2016, to January 31, 2016, because she subsequently testified that the third rape occurred a few months later, yet that the date of the third incident occurred around April 7, 2017. He contends that the jury possibly convicted him on an allegation that was not presented to the grand jury. We disagree.

{¶ 10} Victim 1 testified that the incident giving rise to the allegations in Count 2 occurred after she returned to her grandmother's care following a brief reunification with her mother. She stated that this incident occurred in "2017. I think the weekend in 2017 or 2016." (Tr. 180.) Victim 1 explained that she remembered the date because she was living with her grandmother and they celebrated Christmas late — "[i]t happened after New Year's." (Tr. at *id.*) She

agreed with the prosecutor's clarification that it was "the following January." (Tr. at *id.*)

{¶ 11} Victim 1 testified that she was wearing her favorite pair of fleece leggings that she received as a Christmas gift from her cousin. She stated that Hendrix took her into his bedroom, which is where he also took her during the first sexual assault, removed her fleece leggings, and put his mouth on her vagina. Victim 1 explained, "Like his tongue was all over my vagina, like inside my vagina. . . . Like not inside of me but it was inside of the lips of the vagina, yes." (Tr. 181.) When asked how old she would have been "in 2016/2017," Victim 1 responded, "Nine maybe." (Tr. at *id.*)

{¶ 12} The precise date and time of when a sexual assault occurs is not an essential element of the crime. *See* R.C. 2907.02. "'Where the exact date and time of an offense are not material elements of a crime nor essential to the validity of a conviction, the failure to prove such is of no consequence and it is sufficient to prove that the alleged offense occurred at or about the time charged.'" *State v. Ibrahim*, 2015-Ohio-3345, ¶ 32 (8th Dist.), quoting *State v. Madden*, 15 Ohio App.3d 130, 131 (12th Dist. 1984).

{¶ 13} Moreover, "particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity." *State v. Hemphill*, 2005-Ohio-3726, ¶ 54 (8th Dist.), citing *State v. Daniel*, 97 Ohio App.3d 548, 556 (10th Dist. 1994). This rule has been established because "'[i]n many cases involving child sexual abuse,

the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time.'" *State v. Cochern*, 2018-Ohio-265, ¶ 40 (8th Dist.), quoting *State v. Mundy*, 99 Ohio App.3d 275, 296 (2d Dist. 1994). Moreover, "'[t]he problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse.'" *State v. Thomas*, 2011-Ohio-705, ¶ 22 (8th Dist.), quoting *State v. Robinette*, 1987 Ohio App. LEXIS 5996, *8 (5th Dist. Feb. 27, 1987).

{¶ 14} Although the exact timing of the rape is not an essential element, "the victim's age is an essential element of rape under R.C. 2907.02(A)(1)(b). Accordingly, the State need not establish precise dates of when the offense occurred, if a rational trier of fact could find that the victim was less than 13 years of age at the time of the offense." *State v. Schwarzman*, 2014-Ohio-2393, ¶ 16 (8th Dist.).

{¶ 15} In this case, whether the second act of rape occurred in January 2016 or 2017 is of no consequence to Hendrix's conviction because it does not affect the elements of the offense. Victim 1 confidently knew that the second incident of rape occurred in January, after Christmas. She further offered sufficient testimony about Hendrix's conduct and details surrounding the second rape for a rational juror to conclude that Hendrix committed this act of rape against Victim 1 when

she was under the age of 13.  Accordingly, the State presented sufficient evidence to support Hendrix's conviction for Count 2.

### 2. Count 4 — Victim 2

{¶ 16} Hendrix contends that Victim 2 did not provide sufficient detail to support his conviction for rape as charged in Count 4, which alleged that on or about January 3, 2010, to March 31, 2013, Hendrix engaged in vaginal intercourse with Victim 2, who was under the age of 13 at the time of the offense.

{¶ 17} Victim 2 testified about three instances of sexual abuse perpetrated by Hendrix.  Regarding the conduct giving rise to Count 4, she stated that the sexual abuse started after her sixth birthday, January 3, 2010, and continued until she was age nine.  (Tr. 146.)  She recalled that Hendrix would undress her in the middle of the night, alleging that she soiled herself, and then "he would force himself onto [her] . . . sexually."  (Tr. 147.)  Victim 2 stated that Hendrix would "force his penis inside [her] private areas," and that it "felt like [she] was being torn apart."  (Tr. at *id*.)  According to Victim 2, this conduct lasted three years and occurred prior to another significant incident in 2013 at the renovated house.  (Tr. 155.)

{¶ 18} Although Victim 2 did not give specific details about each act of sexual misconduct Hendrix engaged in with her during this time period, we find that Victim 2 provided sufficient detail for a rational juror to conclude that Hendrix committed an act of rape, to wit: vaginal intercourse, against Victim 2 as charged in Count 4.

{¶ 19} Based on the foregoing, this court finds that the State presented sufficient evidence supporting Hendrix's convictions for rape as charged in Counts 2 and 4. The assignment of error is overruled.

### B. Manifest Weight of the Evidence

{¶ 20} Hendrix contends in his second assignment of error that his convictions for all counts are against the manifest weight of the evidence.[1]

{¶ 21} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387. In a manifest-weight analysis, the reviewing court sits as a "thirteenth juror" and reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins* at 386.

---

[1] The testimony and facts surrounding Count 7 will not be discussed because the jury acquitted Hendrix of that charge involving Victim 3.

{¶ 22} A victim's testimony alone, if believed, is sufficient to sustain a conviction; there is no requirement that a rape victim's testimony be corroborated. *State v. McSwain*, 2017-Ohio-8489, ¶ 34 (8th Dist.), citing *State v. Blankenship*, 2001 Ohio App. LEXIS 5520 (8th Dist. Dec. 13, 2001). Further, a rape conviction obtained without corroborative evidence does not necessarily render the conviction against the manifest weight of the evidence. *State v. Wilk*, 2022-Ohio-1840, ¶ 63 (8th Dist.).

### 1. Trial Testimony

#### a. Victim 1 — Counts 1, 2, and 3

{¶ 23} Victim 1 testified about three separate incidents of rape. The first occurred in October 2012, when Hendrix sexually abused her by attempting to digitally penetrate her vagina (amended Count 1). The second incident occurred in January 2016, when Hendrix sexually abused her by performing cunnilingus (Count 2). And the final rape occurred in April 2017, when Hendrix engaged in vaginal intercourse with her (Count 3). Each of these rapes occurred when Victim 1 was under the age of 13.

{¶ 24} Regarding Count 1, Victim 1 testified that she lived with her grandmother, who had custody of her during this time period. She remembered the incident because she had a special toy, a stuffed brown horse, with her that she had received for her fifth birthday. Victim 1 stated that after she received this horse for her birthday and during the nighttime, Hendrix took her from the couch to the bedroom, where he touched her vagina with his hands. Specifically, she

remembered that after Hendrix unzipped her "favorite princess [onesie]," he "tried to insert his hand [inside her] but it did [not] work." (Tr. 176-177.) She stated that Hendrix then zipped up her onesie and returned her to the couch.

{¶ 25} Victim 1 testified that she told both her grandmother's boyfriend and grandmother about this incident. As a result, Victim 1 returned to live with her mother, who kept her away from Hendrix. Victim 1's mother testified that following this incident, they went to the police and spoke with a social worker. She stated that she implemented "rules" that Victim 1 could not be around Hendrix. On cross-examination, Victim 1's mother admitted that her boyfriends were also not permitted to be alone with Victim 1, but that Victim 1 never accused anyone else — "[Hendrix] was more severe." (Tr. 211-213.)

{¶ 26} As previously discussed in addressing Hendrix's first assignment of error, Victim 1 testified about the second incident of rape (Count 2) that occurred sometime after New Year's during a late-Christmas celebration in 2016 or 2017 at Hendrix's house, where her grandmother was living. Victim 1 testified that Hendrix took her into the same bedroom, where he took her during the earlier sexual assault, removed her new fleece leggings, and put his mouth on her vagina. Victim 1 explained, "Like his tongue was all over my vagina, like inside my vagina. . . . Like not inside of me but it was inside of the lips of the vagina, yes." (Tr. 181.) When asked how old she would have been "in 2016/2017," Victim 1 responded, "Nine maybe." (Tr. at *id*.) According to the victim, Hendrix told her that "if I said anything that he was going to hurt me. . . . I was scared of him. . . . He was hurting

me . . . [w]ith his hands.  So I knew that if he could do that to me, he is definitely going to do more if I would have got him in trouble." (Tr. 183.)

{¶ 27} On cross-examination, Victim 1 stated that she told her uncle immediately following this rape about what Hendrix had done, including taking naked pictures of her.  Despite this, she admitted, however, that her uncle did not find any pictures on Hendrix's cell phone.

{¶ 28} Finally, regarding Count 3, Victim 1 testified that the last time she remembered Hendrix raping her was around her grandmother's birthday in April 2017.  According to Victim 1, Hendrix took her to his bedroom again, removed her clothes, touched her vagina, performed cunnilingus on her, and then inserted his penis into her vagina.  She remembered that it hurt, and Hendrix was only able to insert the tip of his penis.  (Tr. at *id.*).  Victim 1 described that she "felt like [she] was being stabbed in [her] vagina multiple times because [Hendrix] kept . . . trying to force [his penis] in [her vagina], and it wasn't working."  (Tr. 185).  On cross-examination, Victim 1 denied telling the social worker following this incident that Hendrix had certain identifying characteristics on his penis.

### b. Victim 2 — Counts 4, 5, and 6

{¶ 29} Victim 2 testified about three incidents where Hendrix vaginally raped her.  The first occurred between January 2010 and March 2103 (Count 1); the second incident occurred in the Spring 2013 (Count 2); and the final rape occurred in the Fall 2013 (Count 3).  Each of these rapes occurred when she was under the age of 13.

{¶ 30} As previously discussed in addressing Hendrix's first assignment of error regarding Count 4, Victim 2 testified that Hendrix started sexually assaulting her after she turned six years old. Although she could not remember specific occurrences from January 2010 to March 2013, she was able to remember generally how the assaults would occur and how it made her feel. Victim 2 stated that Hendrix would remove her clothes while she was asleep and that she would wake up to him penetrating her vagina with his penis. She explained that it felt like "[she was] being torn apart." (Tr. 147.)

{¶ 31} Regarding Count 5, Victim 2 testified that during the spring 2013, Hendrix was renovating a house on the east side of Cleveland and would often take Victim 2 and her siblings there to help. She remembered once specific instance when Hendrix raped her on a mattress still wrapped in plastic in the living room at the renovated house because "[she] was in a new place and [she] didn't know where she was." (Tr. 152.) Victim 1 stated that Hendrix "grabbed [her] by [her] hair and tossed [her] onto the mattress" and then held her down by her neck and chest while he vaginally penetrated her. (Tr. 150-151.)

{¶ 32} Regarding Count 6, Victim 2 testified that Hendrix raped her for the final time in the fall 2013. She stated she remembered this incident because it was just before she went into foster care. Although she did not recall many details, she remembered being at her grandmother's boyfriend's house and Hendrix tried to vaginally penetrate her.

{¶ 33} Victim 2 stated that she initially disclosed the abuse to Victim 3 about two years prior before speaking with her grandmother in 2021. She said she disclosed Hendrix's abuse because she learned that another family member came forward against Hendrix. Victim 2 stated that in 2022 her foster mother took her to the police.

{¶ 34} On cross-examination, Victim 2 admitted that despite testifying that Hendrix would physically abuse her, no one ever noticed bruising and that she did not show anyone the bruising Hendrix caused to her arms, neck, face, and head.

### c. Hendrix's Testimony

{¶ 35} Hendrix testified in his own defense, denying that he sexually or physically abused any of the victims. He surmised that the victims' grandmother was responsible for generating the allegations against him because in 2021, he fired her son, who worked for him. He said immediately after this falling out, the grandmother coordinated these charges against him.

{¶ 36} Hendrix testified about his involvement with Cuyahoga County Division of Children and Family Services ("CCDCFS") when Victim 1 previously made accusations against him in 2013. He stated that after the social worker interviewed him in 2013, CCDCFS found the allegations unsubstantiated. Hendrix denied having any "rules" implemented following this allegation but stated that he voluntarily distanced himself from Victim 1 to avoid any further accusations. (Tr. at *id.*) He stated that nevertheless, he found himself again "defending himself" following another allegation in 2017. According to Hendrix, CCDCFS determined

these allegations were also "unfounded" after his cell phone "GPS exonerated him." (Tr. 286.)

{¶ 37} According to Hendrix, these allegations were all "scripted." (Tr. 286.) He stated that although Victim 1's grandmother was aware in 2013 and 2017 that Victim 1 made these accusations against him, she did not believe Victim 1. Hendrix believed that Victim 1 made up the allegations for more attention from his stepfather, but now the motivations were different.

### d. Victims' Grandmother

{¶ 38} The victims' grandmother testified, admitting that in November 2012, she learned that Victim 1 made an accusation against Hendrix. She stated that following the accusation, Victim 1's mother took her to CCDCFS and to Fairview Hospital. Grandmother admitted that she did not believe Victim 1 in 2012. Moreover, regarding Victim 1's 2017 allegations, grandmother testified about the social worker's notes that indicated that grandmother did not know why Victim 1 accused Hendrix of touching her and that grandmother stated that the dates of the allegations kept changing. (Tr. 240-241.)

{¶ 39} Grandmother testified that after Victim 3 told her what Hendrix had allegedly done to her in 2007 and 2008, she spoke with Victim 2. She stated that after this conversation, she took both Victims 1 and 3 to the police.

### e. Detective Cindy Adkins

{¶ 40} Detective Cindy Adkins testified that she inherited the case from her predecessor, who previously interviewed the victims, their grandmother, and the

social worker from CCDCFS, and obtained Victim 1's records from CCDCFS. She stated that her file indicated that Victim 1 reported abuse by Hendrix in 2013 and 2017, and that in 2013, Victim 3 denied any wrongdoing by Hendrix. Detective Adkins stated that Hendrix denied the allegations against him.

{¶ 41} According to the detective, victims may delay disclosing abuse due to fear or because of family dynamics. She stated that in her experience, older children are more likely to be untruthful whereas small children may be confused as to timeframes but not confused about the person whom they are accusing.

### 2. Analysis

{¶ 42} Hendrix urges this court to consider our decision in *In re Reillo*, 2024-Ohio-3307 (8th Dist.), *discretionary appeal accepted,* 2025-Ohio-705, wherein this court reversed the appellant's sexual abuse convictions as being against the manifest weight of the evidence in a delayed disclosure prosecution due to the lack of corroborating evidence, details surrounding the abuse, and inconsistencies in testimony. Hendrix contends that certain similarities exist with his case and Reillo's case — the State presented no physical evidence corroborating the victims' allegations. Moreover, he contends that unlike *Reillo* where medical and professional testimony was advanced supporting the victim's accusations, no such testimony was presented in his case. Hendrix recognizes, however, that his case differs somewhat from *Reillo* because his case involves multiple victims and they were able to recall more details than the victim in *Reillo*. Essentially, Hendrix

contends that if the evidence presented in *Reillo* was the exceptional case warranting reversal, then his case is equally exceptional. We disagree.

{¶ 43} Unlike in *Reillo*, the jury heard specific details that the victims offered concerning the abuse suffered by Hendrix. Each victim testified as to either specific or general time periods when Hendrix abused them, including what they were wearing and where the rapes occurred. Moreover, Victim 1 stated that in 2012, she immediately disclosed the abuse to family members and professionals, but either no one believed her or her disclosures did not result in any further investigation, except the implementation of "rules" that she was no longer allowed to be alone with Hendrix.

{¶ 44} More importantly, unlike in *Reillo*, Hendrix testified in his defense, allowing the jury to consider and assess his testimony against that of the testimonies of the three victims. "If a case amounts to a 'he said, she said' dispute, [this court] will not second-guess the trier of fact's resolution of that dispute where the defendant has not set forth any corroborating evidence as to why this court should disrupt that [resolution], other than reiterating to us what 'he said.'" *State v. Lanier*, 2021-Ohio-379, ¶ 22 (8th Dist.), citing *State v. Taylor*, 2016-Ohio-2765, ¶ 14 (9th Dist.), quoting *State v. Martinez*, 2008-Ohio-4845, ¶ 17 (9th Dist.).

{¶ 45} Hendrix's testimony demonstrated that Victim 1's allegations of sexual abuse were not delayed. He testified that after Victim 1 accused him of sexual misconduct, he spoke with CCDCFS in 2013 and 2017. Hendrix stated that both times, the allegations were unfounded or unsubstantiated. Accordingly,

unlike *Reillo*, Victim 1's disclosures were not delayed, just not believed. Although Hendrix was investigated by CCDCFS previously, he now surmised at trial that the victims' grandmother was the reason behind the allegations due to an employment dispute involving her son. Accordingly, the jury was able to determine whether charges arose due to grandmother seeking retribution for her son or whether Victim 1's allegations were in fact validated because it was discovered that Hendrix perpetrated abuse on other minor-aged family members around relatively the same timeframe.

{¶ 46} We further find that the jury was able to assess the credibility of each victim and believe or disbelieve the victims where they deemed it appropriate. The jury's ability to make these credibility assessments and segregate proof is reflected in the not guilty verdict involving one victim in the indictment. *See, e.g., State v. Bonneau*, 2012-Ohio-3258, ¶ 22 (8th Dist.) (not guilty verdict as to counts pertaining to one victim and guilty verdicts as to another demonstrated jury was able to separate the evidence and consider victims separately).

{¶ 47} Based on the foregoing, we find that this is not the exceptional case requiring this court to step in as the thirteenth juror, reverse Hendrix's convictions, and order a new trial. The second assignment of error is overruled.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by Assignment:  Wiliam A. Klatt, retired, of the Tenth District Court of Appeals.)